RICHARD CRONIN and Others, Respondents, *v.* WILLIAM M. TEBO, Appellant.

*Contract for dredging — dumping ground — abandonment of work.*

The acceptance by parties, who were the contractors for the building of bulkheads, of an offer to dredge a trench for crib bottoms for a specified sum, "the material so dredged to be deposited inshore," does not obligate such contractors to furnish a dumping ground inshore and hence prevent their recovering damages from the party making the offer because of his abandonment of the work, on his being prohibited by the shore inspector from depositing material inshore, nor entitle him, on such abandonment of the work by him before completion, to recover payment for the work actually done by him, his contract being an entire one. (BARNARD, P. J., dissenting.)

APPEAL by the defendant, William M. Tebo, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of Kings county on the 31st day of January, 1893, upon a verdict rendered by direction of the court at the Kings Circuit, and from an order denying the defendant's motion for a new trial made upon the minutes.

*J. T. Marean,* for the appellant.

*James C. Church,* for the respondents.

DYKMAN, J.:

The plaintiffs in this action made a contract with Maltby G. Lane to build certain bulkheads at Fort Hamilton, the construction of which required an excavation in the ground under water for their reception.

The defendant is engaged in the business of dredging, and as the result of a conversation between one of the plaintiffs and the agent of the defendant, he made a written offer to the plaintiffs, of which the following is a copy :

"BROOKLYN, *June* 13, 1887.

"I, the undersigned, propose and offer to excavate and dredge a trench seven hundred and seventy-five feet in length for crib bottom of thirty (30) feet wide to the depth of twenty (20) feet at mean

low water, for the sum of twenty-three hundred ($2,300) dollars, the material so dredged to be deposited inshore so as not to interfere with said trench.

                   " Respectfully yours,

                        " W. M. TEBO.

" To *R. Cronin & Sons.*                         BENTLEY."

The proposition was accepted verbally and the defendant was directed to proceed with the work, which he did in a few days thereafter. He was prevented by the shore inspector from dumping the material inshore, and carried the same to sea until about the seventh day of July, when he ceased to work, and did no more dredging thereafter.

This action is for the recovery of damages sustained by the plaintiffs in consequence of the failure of the defendant to complete his contract, and for services in driving some piles.

There seems to have been no dispute respecting the claim of the plaintiffs, but the defendant set up a counterclaim of $1,444.51 for the work he actually did under the contract.

The counterclaim is based upon the theory that the contract secured to the defendant the right to dump the excavated material inshore. That it was the duty of the plaintiffs to furnish that place of deposit under the contract, and as they failed to perform that portion of the contract on their part, the defendant was justified in the abandonment of the work, and entitled to compensation for what he had done under the contract.

The trial judge decided against the defendant, and directed a verdict in favor of the plaintiffs for $589.39.

The defendant has appealed from the judgment entered upon the verdict, and from the order denying a motion for a new trial upon the minutes of the court.

It is true that the last clause of the defendant's offer states that the material dredged was to be deposited inshore, and both parties intended and expected to have it so placed.

Under all the circumstances, however, it cannot be assumed that the plaintiffs undertook to furnish the place designated as a dumping ground. The contract was formed by the acceptance of the defendant's offer. The plaintiffs made no stipulation, and in respect to the ground designated in the offer, they could make none.

They had no control over the place, and could grant no privilege in respect thereto.

Their acceptance of the defendant's offer constituted an assent to the propositions contained therein, but they made no stipulation on their part. In the absence of an express undertaking, the law in its interpretation of the transaction implies an obligation on the part of the defendant to perform the services according to his proposition for the price named, and against the plaintiffs it implies a duty to allow the defendant to do the work and pay him the price stipulated therefor.

Such were the legal obligations of the parties. The contract was entire, with no provision for payment until the work was completed, and as the defendant abandoned the contract and failed to perform it, he is entitled to no compensation for what he did.

In respect to the new arrangement between the parties upon which the defendant now insists, it is sufficient to say that it was not pleaded and has no consideration for its support.

Our view is justified by all the facts and circumstances surrounding the transaction. The defendant knew the plaintiffs were contractors to lay down the crib work for certain fillings. They had no more control of the premises and no more power to obtain permission to leave the material inshore, than the defendant.

He did not require them to furnish a place for the deposition of the excavated material, or to obtain permission to lay it down inshore. He merely said it was to be so laid down, and they assented, and so they were bound to make no interference in that respect.

Our conclusion is that the proper disposition was made of the case, and the judgment and order should be affirmed, with costs.

PRATT, J., concurred.

BARNARD, P. J. (dissenting):

The plaintiffs' claim was not disputed. The only question presented is as to the defendant's counterclaim. One Lane owned water front property at Fort Hamilton. The plaintiffs are dock builders. The defendant is a dredger. The work which plaintiffs undertook to do for Lane was to build a bulkhead around the property. There was an existing bulkhead on the north side of the

property which had to be extended some eighty feet and then to be continued south 775 feet parallel to the shore and then to the shore. The defendant was to dredge for the plaintiffs the 775 feet for crib bottom, thirty feet wide and twenty feet deep at mean low water. The dumping was to be inshore, so as not to interfere with the trench. When defendant commenced his work and proceeded to dump inshore, he was stopped by the shore inspector. The objection he made was that the dumping could not take place inshore until the pile work was put in for this eighty feet extension. That would have protected the trench under the contract and would have met the objection of the shore inspector. The plaintiffs promised to put down this eighty feet crib in extension of the old bulkhead in a few days, which they failed to do. The defendant continued to dredge and carry the material and dump it at sea at large increased expense to him, until the plaintiffs finally refused to put it in, when the defendant left the work. Assuming all disputed facts in favor of the defendant, the case is one where the plaintiffs broke the contract as amended after the shore inspector objected to the inshore dumping. The inspector assumed that the extension of the old bulkhead would protect the material dumped from being washed away by the tide, and the plaintiffs agreed to give place for inshore dumping by the completion of this dock extension. They did not do so, and the defendant quit the work on that account.

The judgment should be reversed and a new trial granted, costs to abide event.

Judgment and order denying new trial affirmed, with costs.